IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:23-CV-00292-M-RJ

TYRANCE DREQUAN BENBOW and )
BECKY LEE LESALLE, *individually, as* )
*heir to Tyrance Drequan Benbow and as* )
*representative of the estate of Tyrance* )
*Drequen Benbow deceased*, )
)  ORDER
Plaintiffs, )
)
v. )
)
SHERIFF JOHN W. INGRAM, et al., )
)
Defendants. )

This matter comes before the court on a motion for sanctions filed by Plaintiffs Tyrance Drequan Benbow and Becky Lee LeSalle (collectively, "Plaintiffs") [DE 84] ("Motion"). Plaintiffs request entry of a default judgment or, alternatively, an adverse inference for Defendants' alleged spoliation of material evidence. Defendants Sheriff John Ingram, Sergeant Josh Davies, Deputy Keith Bowling, Deputy Alexander Melvin, and Deputy Johnnie Benton (collectively, "Defendants") oppose the Motion.

Pursuant to 28 U.S.C. § 636(b)(l)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, United States Magistrate Judge Robert B. Jones, Jr. issued a memorandum and recommendation ("M&R"), recommending that the court deny the Motion. [DE 128]. After receiving an extension of time [DE 134], Plaintiffs filed a memorandum in opposition to the M&R asking this court to "reconsider and alter or amend [the M&R] . . . denying Plaintiffs' [Motion]." [DE 135]. Because Magistrate Judge Jones issued an M&R pursuant to section 636(b)(1)(B) rather than an order pursuant to section 636(b)(1)(A), the Motion remains ripe for decision. Accordingly,

the court will consider Plaintiffs' memorandum in opposition as timely written objections to the M&R under Rule 72(b)(2). Defendants filed a timely response to Plaintiffs' objections. For the reasons that follow, this court overrules Plaintiffs' objections and adopts the M&R.

A.   **Relevant Background**

Plaintiffs initiated this action against Defendants, all members of the Brunswick County Sheriff's Office ("BCSO"), related to a traffic incident that occurred on July 8, 2022, and ultimately resulted in Plaintiff Benbow's death. *See generally* [DE 66].[1]

The instant dispute concerns alleged post-accident actions taken by Defendants to alter the condition of Benbow's Nissan Altima ("Vehicle"). At some point after the accident, Civietown Fire and Rescue personnel, including volunteer firefighter David Robinson, arrived on the scene. [DE 85] at 13–20. In general, Plaintiffs assert that Defendants instructed members of Civietown Fire and Rescue to use a hydraulic rescue tool known as the "jaws of life" to destroy the Vehicle so that "any subsequent effort by the NCSHP or [the] Plaintiff[s'] expert to accurately reconstruct the accident was corrupted . . . ." [DE 85]; [DE 85-1 to -14]; [DE 100].

Defendants' version of events differs. Defendants assert that North Carolina State Highway Patrol ("NCSHP") had jurisdiction over the accident scene.[2] [DE 94] at 8–13. With NCSHP's permission, BCSO officers conducted a drug search of the Vehicle and its surroundings. *Id.* at 9–10. Due to the crash, certain parts of the Vehicle remained inaccessible to BCSO officers. *Id.* After confirming with NCSHP that cutting portions of the Vehicle would not interfere with NCSHP's accident investigation, BCSO officers requested that Civietown Fire and Rescue personnel remove the Vehicle's roof. *Id.* at 12–13. Once BCSO officers completed their search of the Vehicle, Civietown Fire and Rescue personnel put the Vehicle's roof back into place. *Id.* at

---

[1] The court adopts the M&R's Background section as its own. *See* [DE 128] 1–5.
[2] NCSHP is not a party to this lawsuit.

2

13.

### B. Standard of Review

A magistrate judge's recommendation carries no presumptive weight. The court "may accept, reject, or modify, in whole or in part, the . . . recommendation[ ] . . . receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); *accord Mathews v. Weber*, 423 U.S. 261, 271 (1976). The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1). Without timely objection, de novo review is unnecessary, and a district court need only check for clear error on the face of the record to accept the magistrate judge's recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing 28 U.S.C. § 636(b)(1)). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Under § 636(b)(1), the movant's objections to the M&R must be "specific and particularized" to facilitate district court review. *United States v. Midgette,* 478 F.3d 616, 621 (4th Cir. 2007). On the other hand, "general and conclusory objections that do not direct the court to a specific error" in the M&R fall short of this standard. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (concluding that de novo review was still required under these decisions where a pro se litigant had objected to specific factual findings in the M&R).

### C. Discussion

Plaintiffs object broadly to Judge Jones' factual and legal findings that Plaintiffs have failed to carry their burden in seeking sanctions against Defendants for spoliation of evidence. *See generally* [DE 135]. The only specific objection Plaintiffs make is that Judge Jones improperly

3

gave greater weight to Defendants' bodycam footage than to David Robinson's affidavit and recorded statement. *Id. passim.* The court reviews this issue de novo. *Stokes*, 294 F. Supp. 3d at 462.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). "The imposition of a sanction (e.g., an adverse inference) for spoliation of evidence is an inherent power of federal courts— though one limited to that action necessary to redress conduct which abuses the judicial process." *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 449 (4th Cir. 2004). However, a sanction for spoliation "cannot be drawn merely from [a party's] negligent loss or destruction of evidence." *Id.* at 450. "[T]he conduct must be intentional," and "the alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction." *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013).

Courts in the Fourth Circuit generally consider the following factors when analyzing spoliation claims: "(1) the party with control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the opposing party." *City Grill Hosp. Grp., Inc. v. Nationwide Mut. Ins. Co.*, No. 5:12-CV-610-F, 2014 WL 1429552, at *3 (E.D.N.C. Apr. 14, 2014) (citations omitted). Plaintiffs bear the burden of proving that sanctions are warranted by clear and convincing evidence.[3] *See Mack v. Food Lion,*

---

[3] Though not explicitly settled by the Fourth Circuit, courts have consistently applied the clear and convincing burden to movants seeking relatively harsh sanctions, such as default judgment or adverse inference. *See, e.g., Fowler v. Tenth Planet, Inc.*, 673 F. Supp. 3d 763, 773 (D. Md. 2023); *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No. 2:19-CV-324 (RCY), 2022 WL 853626, at *3

4

*LLC*, No. 5:23-CV-327-M, 2024 WL 4023782, at *3 (E.D.N.C. Aug. 29, 2024) (collecting cases).

Plaintiffs make three arguments regarding Judge Jones' allegedly improper evidential analysis: (1) credibility determinations should be made by the jury, not the court; (2) the body-worn camera footage attached to Defendants' response brief was not disclosed and is not authenticated; and (3) David Robinson's audio testimony and affidavit [DE 85-9] were improperly excluded. None are availing.

First, the court may weigh the evidence submitted when considering a motion for sanctions. *See Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023) ("[A] district court [imposing sanctions] is accuser, fact finder and sentencing judge all in one . . . .") (citation omitted). Thus, the court may consider all attachments to the Motion and related pleadings in determining whether Plaintiffs have carried their "clear and convincing" burden. *See Mack*, 2024 WL 4023782 at *3.

Next, the court may consider the body-worn camera footage attached to Defendants' response [DE 94]. Rule 901 of the Federal Rules of Evidence requires parties introducing video evidence to "produce evidence sufficient to support a finding that the [video] is what the proponent claims it is." Fed. R. Evid. 901(a). Plaintiffs argue that the body-worn camera footage referenced in Defendants' response (collectively, "Bodycam Videos") have not been authenticated but offer no specifics beyond asserting "there is no chain of custody." [DE 135] at 17. The Bodycam Videos are properly authenticated under Rule 901. Defendants submitted the Bodycam Videos pursuant to a protective order [DE 90], as required by N.C. Gen. Stat. § 132-1.4A, and filed relevant affidavits in support from Deputy Bowling, Deputy Melvin, Deputy Benton, and Sergeant Davies. *See United States v. Brewer*, 533 F. App'x 234, 236 (4th Cir. 2013) (holding the district court did

---

(E.D. Va. Mar. 22, 2022).

5

not abuse its discretion in admitting a video clip and related photographs taken where "[w]itness testimony authenticated the time and date the challenged video clip was recorded, satisfying [Federal Rule of Evidence] 901").

Defendants have also plausibly explained why Sergeant Davies' videos were not produced until after Plaintiffs filed the instant Motion; the instant Motion is the first time Plaintiffs made allegations regarding Defendants' actions at the scene post-accident. *See generally* [DE 84]; *see also* [DE 141] at 8–9. Sergeant Davies' body-worn camera videos all occur post-accident and after Plaintiff Benbow had been removed from the scene. *See* Davies Videos 1–5.

Finally, Judge Jones did not "exclude" David Robinson's testimony.[4] *See* [DE 135] at 9. On the contrary, the M&R contains substantial engagement with this evidence:

> The relevant portion of Robinson's affidavit generally explains that while Defendants were searching [the Vehicle] for drugs, Robinson saw a BCSO Deputy use the Jaws of Life to "tear up" the [Vehicle] . . . . Defendants contend that any possible culpability claims based on David Robinson's observations are negated by Davies's body-worn camera footage, [DE 95] at 21–23, and the undersigned agrees. Davies Video 4 does not directly contradict any of the statements made in Robinson's affidavit; instead, it adds helpful context by showing that Defendants consulted with NCSHP troopers before requesting that firefighters cut into the [Vehicle's] roof. Davies Video 4, 5:20–5:55, 6:53–8:08.

[DE 128] at 14 (cleaned up). The court agrees with Judge Jones' analysis. Again, for the court to grant Plaintiffs' requested relief—default judgment or an adverse inference—Plaintiffs must prove by clear and convincing evidence that such sanctions are warranted. *See Mack*, 2024 WL 4023782 at *3. Robinson testified that BCSO personnel instructed Civietown Fire and Rescue to use the "jaws of life" to search the Vehicle for drugs. [DE 85-9] ¶ 11. Robinson further stated that the

---

[4] The court makes no findings at this time regarding the admissibility of David Robinson's testimony at trial.

6

Case 7:23-cv-00292-M-RJ   Document 144   Filed 09/27/24   Page 6 of 8

"jaws of life" "[tore] up" the Vehicle but he never saw any drugs removed from it.[5] *Id.* at ¶ 12. Over his thirty years of experience, Robinson had never seen the "jaws of life" used to search a vehicle for drugs. *Id.* at ¶ 14. It is Robinson's opinion that NCSHP's ability to accurately reconstruct the accident was tainted by the damage to the Vehicle after BCSO personnel used the "jaws of life." *Id.* at ¶ 14. Robinson acknowledges that he arrived after the Vehicle had been turned over and Benbow had been removed from the scene. *See* [DE 100-1], David Robinson Interview-Recording 9, 4:25–5:30, 8:30–9:30.

Plaintiffs argue that Robinson's testimony on this point amounts to "clear and convincing evidence of Defendants' knowledge and intentional destruction of the [V]ehicle's condition, which was critical to developing a detailed and accurate reconstruction of the [accident]." [DE 135] at 6. Not only does Robinson's testimony fall short on its own accord, it is also contradicted by Sergeant Davies' body-worn camera footage from the scene. For example, BCSO officers did recover quantities of apparent cocaine from the Vehicle, *see, e.g.*, Davies Video 3, 3:50–4:30 (identifying apparent bag of cocaine inside Vehicle); Davies Video 4, 6:30–7:00 (identifying several ounces of apparent cocaine in his hand), before asking NCSHP officers for permission to remove the Vehicle's roof to continue the drug search.[6] *See* Davies Video 4, 5:20–55, 6:53–8:25. NCSHP informs BCSO officers that removing the Vehicle roof will not affect their inspection process. *Id.* As BCSO officers continue the Vehicle search, BCSO Major Steve Lanier[7] says he wants to "make sure we don't leave any cocaine in [the Vehicle]." Davies Video 5, 2:30–40.

---

[5] In a recorded interview, Robinson states that BCSO officers did make "insinuations" that drugs had been found at the scene. [DE 100-1], David Robinson Interview-Recording 9, 30:30–50.
[6] The idea to use the hydraulic tool appears to originate with an unidentified member of Civietown Fire and Rescue, who tells Sergeant Davies he has a "hydraulic tool" that can "pop the [Vehicle's] doors." Davies Video 3, 2:30–50. Civietown Fire and Rescue is not a party to this lawsuit. Its chief, Mark Hewett, was previously dismissed as a Defendant [DE 89].
[7] Major Lanier is not a party to this lawsuit.

7

On balance, the evidence shows that BCSO officers conducted a Vehicle drug search, found suspected cocaine and, when faced with inaccessible areas, sought NCSHP's permission before using hydraulic tools to access and search the rest of the Vehicle. Plaintiffs have not presented any evidence that Defendants "willfully engaged in conduct resulting in the evidence's loss or destruction." *Turner*, 736 F.3d at 282; *see also Hodge*, 360 F.3d at 450 (severe sanctions "cannot be drawn merely from [a defendant's] negligent loss or destruction of evidence; [severe sanctions] require a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction") (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995)). Accordingly, the court cannot grant Plaintiffs their requested relief.

### D. Conclusion

For the reasons stated above, Plaintiffs' objections [DE 135] are OVERRULED. Beyond those objections, the court reviews only for "clear error." *Diamond*, 416 F.3d at 315. Finding none upon careful review of the M&R and the record presented, the court ADOPTS the recommendation of the magistrate judge as its own. For the reasons stated therein, it is hereby ORDERED that Plaintiffs' Motion [DE 84] is DENIED.

SO ORDERED this 27th of September, 2024.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE